**FOUR B CORP., et al., Plaintiffs,**

v.

**DAICEL CHEMICAL INDUSTRIES, LTD., et al., Defendants.**

**No. CIV.A.01–2394–CM.**

United States District Court, D. Kansas.

Feb. 26, 2003.

Amy E. Bauman, Jan P. Helder, Jr., Patrick J. Stueve, Stueve Helder Siegel LLP, Kansas City, MO, Peggy A. Wilson, Peggy A. Wilson LLC, Kansas City, MO, Todd E. Hilton, Stueve Helder Siegel LLP, Kansas City, MO, for Plaintiffs.

Aton Arbisser, Los Angeles, CA, David E. Everson, Jr., Stinson Morrison Hecker LLP, Kansas City, MO, Victoria L. Smith, Stinson Morrison Hecker, LLP, Kansas City, MO, for CNA Holdings, Daicel (U.S.A.), Inc., Hoechst Celanese Corp., Nutrinova, Inc., defendants.

Sarah Yehle Fulkerson, Horn, Aylward & Bandy LLC, Kansas City, MO, Robert A. Horn, for Eastman Chemical Co., defendant.

James J. Garrett, Morrison & Foerster LLP, Walnut Creek, CA, for Nippon Synthetic Chemical Industry Co., Ltd., defendant.John J. Miller, Kansas City, MO, for Kanematsu USA, Inc., Mitsui & Co. (USA), Inc., Chisso America, Inc., UENO Fine Chemicals Industry (U.S.A.), Inc., Chisso Corp., UENO Fine Chemicals Industry, Ltd. defendant.

Herbert S. Washer, New York, NY, for Daicel Chemical Industries, Ltd., defendant.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

This purported class action arises out of an alleged international conspiracy to fix the prices of sorbates, including potassium sorbate and sorbic acid, which are chemical preservatives used in food products. Plaintiffs are "indirect purchasers" of sorbates, who allegedly purchased products containing sorbates that were manufactured and sold by defendants. Plaintiffs allege that defendants engaged in the manufacture and sale of sorbates throughout the world and specifically in Kansas. Plaintiffs further allege that defendants' conspiracy to control the prices of sorbates affected over $1 billion in U.S. commerce and that they sustained damages due to defendants' actions. Plaintiffs contend that defendants' actions in fixing the prices of sorbates were in violation of Kansas antitrust law, Kan. Stat. Ann. § 50–101, *et seq.*

Pending before the court is defendants Daicel Chemical Industries, Ltd., Daicel (U.S.A.), Inc., The Nippon Synthetic Chemical Industry Co., Ltd., a/k/a Nippon Gohsei, Hoechst Aktiengesellschaft, a/k/a Hoechst AG, CNA Holdings f/k/a HNA Holdings, Inc. and Hoecsht Celanese, Nutrinova Nutrition Specialties & Food Ingredients GmbH, Nutrinova, Inc. and Eastman Chemical Company's Motion for Judgment on the Pleadings Pursuant to Fed.R.Civ.P. 12(c). (Doc. 103).[1] All moving defendants (referenced collectively herein as "defendants") move the court to grant judgment in their favor on each of plaintiffs' claims. As set forth herein, defendants' motion is denied.

● **Judgment on the Pleadings Standard**

A motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is governed by the same standards as a Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *See Mock v. T.G. & Y. Stores Co.,* 971 F.2d 522, 528 (10th Cir.1992). The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *see Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive. *See Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded factual allegations in the complaint, as distinguished from conclusory allegations, *see Maher,* 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *See Witt v. Roadway Express,* 136 F.3d 1424, 1428 (10th Cir.1998). The issue in resolving a motion such as this is not whether the plaintiff will

---

1. Although defendant Ueno Fine Chemicals Industry, Ltd. and defendant Chisso Corporation joined in the pending motion (Docs. 113 & 114), on January 8, 2003, the court dismissed these defendants from the lawsuit for lack of personal jurisdiction.

ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

● **Discussion**

Plaintiffs allege defendants violated provisions of the Kansas Restraint of Trade Act (the Kansas Act or Act) by engaging in price fixing of sorbates. Plaintiffs further allege that defendants' actions caused plaintiffs to incur damages. Defendants seek judgment on the pleadings on each of plaintiffs' claims. In support, defendants argue that plaintiffs' theory of recovery contradicts the plain language of Kansas antitrust law, that plaintiffs' suggested application of Kansas antitrust law would render it unconstitutional, and that plaintiffs' claims are untimely under the applicable statute of limitations period. As set forth below, defendants' motion is denied.

● **Whether Theory of Recovery Contradicts Kansas Antitrust Law**

Defendants first contend that the monetary remedy sought by plaintiffs is not authorized by Kansas antitrust law. Specifically, defendants assert that plaintiffs, as indirect purchasers of sorbates, "do not have standing" to pursue the full consideration remedy set out in Kan. Stat. Ann. § 50–115. (Defs.' Mem. at 6). In addition, defendants contend that the Kansas legislature could not have intended the result of allowing plaintiffs here to recover both under the full consideration provision and the treble damages provision of the Kansas Act.

A federal court sitting in diversity must apply the substantive law of the forum state. *Commerce Bank, N.A. v. Chrysler Realty Corp.,* 244 F.3d 777, 780 (10th Cir. 2001). Accordingly, in this diversity action presenting issues of Kansas statutory law, this court's role is to apply Kansas state

law as it exists, or if state law is silent, rule as it believes the state supreme court would rule. *Coletti v. Cudd Pressure Control,* 165 F.3d 767, 775 (10th Cir.1999). Where "no state cases exist on a point," the federal court must "turn to other 'state court decisions, federal decisions, and the general weight and trend of authority' " for guidance. Barnard v. Fireman's Fund Ins. Co., 996 F.2d 246, 248 (10th Cir.1993) (quoting *Armijo v. Ex Cam, Inc.,* 843 F.2d 406, 407 (10th Cir.1988)).

As relevant here, the Kansas Act provides for two remedies—the full consideration paid and treble the damages sustained. Specifically, with respect to violations of sections 112 and 113 of the Act, which declare unlawful trusts, combinations and agreements in restraint of trade and free competition, the Act provides that:

> any person injured or damaged by any such arrangement, contract, agreement, trust or combination, described in K.S.A. 50–112 and 50–113, and amendments thereto, may sue for and recover in any court of competent jurisdiction in this state, of any person, the full consideration or sum paid by such person for any goods, wares, merchandise and articles included in or advanced or controlled in price by such combination, or the full amount of money borrowed.

Kan. Stat. Ann. § 50–115 (Supp.2000) (emphasis added). In addition, with respect to violations of any provision of the Kansas Act, the Act provides, as an "alternative and in addition to any other remedies now provided by law," that:

> any person who may be damaged or injured by any agreement, monopoly, trust, conspiracy or combination which is declared unlawful by any of the acts contained in chapter 50 of the Kansas Statutes Annotated, relating to unlawful acts, agreements, monopolies, trusts,

conspiracies or combinations in restraint of trade, shall have a cause of action against any person causing such damage or injury. Such action may be brought by any person who is injured in such person's business or property by reason of anything forbidden or declared unlawful by this act, regardless of whether such injured person dealt directly or indirectly with the defendant. The plaintiff in any action commenced hereunder in the district court of the county wherein such plaintiff resides, or the district court of the county of the defendant's principal place of business, may sue for and recover treble the damages sustained.

*Id.* § 161(b) & (c) (emphasis added).

The Supreme Court of Kansas has not addressed the question presented to this court, i.e., whether the full consideration remedy provided for in § 50–115 is available to indirect purchasers such as plaintiffs in this action. Stated another way, the issue presented is whether plaintiffs, as indirect purchasers, have "standing" in this antitrust case to pursue full consideration damages.[2] Accordingly, this court "must determine what decision the state court would make if faced with the same facts and issue ... [by] consider[ing] state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority." *Armijo,* 843 F.2d at 407 (internal citations omitted).

 Significant here, although the highest court in Kansas has not examined the issue presented, one lower court has issued an unpublished journal entry opinion that is arguably on point. In *Smith v. Philip Morris Companies,* the District Court of Seward County, Kansas examined whether indirect purchasers were eligible for full consideration damages under the Kansas Act. Examining arguments similar to those raised by defendants here, the *Smith* court found that indirect purchasers are eligible to receive full consideration damages under § 50–115. The *Smith* court first recognized that the Kansas legislature amended the Kansas Act in 1985 to reflect the State's intent to allow indirect purchaser actions despite the Supreme Court's finding in 1977 that such actions were disallowed under the federal antitrust statutes. Next, the *Smith* court recognized that although the 1985 amendments placed a specific reference to indirect purchasers only in the treble damages provision of the Kansas Act (§ 50–161(b)),[3] this did not reflect the Kansas legislature's intent to preclude an indirect purchaser's recovery of full consideration damages under § 50–115 of the Act. Interpreting the Kansas Act, the *Smith* court found that the Kansas legislature "recognized its statute of K.S.A. 50–115 as being fully sufficient for an indirect purchaser to sue for the full consideration of the product." Accordingly, the *Smith* court held that indirect purchasers have "standing" to sue for full consideration of a product purchased that is artificially increased in price due to unlawful antitrust activity. Defendants assert that the *Smith* decision is not dispositive here because the factual direct purchaser scenario presented in *Smith* is separate and distinct from the factual di-

---

**2.** See generally *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149, (1982) (examining the concept of "standing" in the antitrust context); *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 535 n. 31, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (noting "the focus of the doctrine of 'antitrust standing' is somewhat different from that of standing as a constitutional doctrine").

**3.** Although the *Smith* court cites the treble damages provision as § 50–801, an examination of the historical statutes of Kansas shows that § 50–801 is a predecessor of § 50–161.

rect purchaser situation presented here. The court acknowledges that the *Smith* case may involve a different factual situation, but finds the difference does not detract from the *Smith* court's reasoning and persuasiveness in this case.

■■■ This court must now determine whether the Kansas Supreme Court would adopt the finding and reasoning of the *Smith* court. When construing a statute, the fundamental rule is that the intent of the legislature governs. *City of Wichita v. 200 S. Broadway Ltd. P'ship,* 253 Kan. 434, 436, 855 P.2d 956, 958 (1993). "In determining legislative intent, courts may consider the background of the enactment, the circumstances attending its passage, and the effect the statute may have under the suggested constructions." *Lee v. Boeing Co.-Wichita,* 21 Kan.App.2d 365, 368, 899 P.2d 516, 518 (1995) (citing *West v. Collins,* 251 Kan. 657, Syl. ¶ 4, 840 P.2d 435 (1992)).

Defendants argue that the plain language of § 50–115 makes clear that full consideration damages are not available to plaintiffs because plaintiffs did not purchase "any goods, wares, merchandise and articles included in or advanced or controlled in price by" defendants' alleged antitrust behavior. (Defs.' Mem. at 6). Instead, defendants argue that plaintiffs purchased products that contained defendants' sorbates and that these indirect purchases preclude recovery under § 50–115. The court disagrees that, on its face, § 50–115's statutory language should be so narrowly construed. Section 50–115 specifically contemplates full consideration recovery for indirect purchasers when it specifies that "any person injured or damaged ... may sue for and recover ... the full consideration or sum paid by such person for any goods, wares, merchandise and articles included in or advanced or controlled in price by such combination." Kan. Stat. Ann. § 50–115 (emphasis add-

ed). Arguably, under the plain language of the statute, when a product is "advanced ... in price" by an unlawful combination, a person damaged by the unlawful combination may recover the full consideration paid for the product.

In addition, it is clear from the plain language of § 50–161(b) that indirect purchasers are eligible for treble damages. Significant to the court, no distinction is made between the "person" allowed to recover treble damages under § 50–161(b) and the "person" allowed to recover full consideration damages under § 50–115. Kan. Stat. Ann. §§ 50–115 & 50–161(b). The only distinction made between eligible persons in the Kansas Act is the addition of the state as an additional "person" eligible for recovery under § 50–161(b). *Id.* Therefore, based on these considerations and in light of the Kansas Supreme Court's reference that the Kansas Act provides for "broad remedies," the court finds the plain language of § 50–115 allows for the full consideration damages sought by plaintiffs. *See Bergstrom v. Noah,* 266 Kan. 847, 879, 974 P.2d 531, 556 (1999).

Defendants next argue that if plaintiffs here were allowed full consideration damages, an "absurd result" would be produced. (Defs.' Mem. at 7). Plaintiffs assert in their Complaint that the purchase of food products containing sorbates during the relevant period in Kansas amounted to over $100 million. (Compl. at ¶ 4). Plaintiffs seek entitlement to this sum under the full consideration provision of the Kansas Act and entitlement to treble the full consideration amount under the treble damages provision of the Act. It is this potential "$450 million" award that defendants contend would be an absurd result under plaintiffs' reading of the Kansas Act's damages provisions. (Defs.' Mem. at 7).

In support of this argument, defendants contend that the appropriate estimation of the dollar value of the sorbates contained in the food products purchased by plaintiffs should be determined by reference to the settlement amount—approximately $50,000—agreed to by sorbate manufacturers and indirect purchasers in the *Williams* class action, a class action from which plaintiffs in this lawsuit opted out.[4] Defendants appear to contend that when using this "actual" value of the sorbates indirectly purchased by plaintiffs, allowing plaintiffs to recover the full consideration paid for the products—as plead, an amount in excess of $100 million—would produce absurd results. However, without specific information about the amount and value of the sorbates contained in the products at issue, or access to the reasoning of the parties in reaching the settlement amount, this court is unwilling to rely on the parties' determination as to the proper value of the sorbates purchased by the plaintiffs here who opted out of the *Williams* class.[5] Accordingly, the court finds that without evidence of the percentage of overcharge created by the inclusion of defendants' price fixed sorbates in the products purchased by plaintiffs, the court cannot assume that an "absurd result" would result from the allowance of full consideration and treble damages to plaintiffs here. Therefore, although "it is a venerable principle that a law will not be interpreted to produce absurd results," *K Mart Corp. v.*

*Cartier, Inc.,* 486 U.S. 281, 325 n. 2, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988), and the Kansas courts have recognized that "statutes should be construed to avoid unreasonable results," *Wells v. Anderson,* 8 Kan. App.2d 431, 433, 659 P.2d 833, 835 (1983), given the record before it at this stage of the proceeding, the court cannot determine that plaintiffs' suggested interpretation of the Kansas Act's damages provision would produce absurd or unreasonable results.

Accordingly, considering the Kansas state court decision in *Smith,* the plain language of § 50–115, and considering the sparse record at this stage of the proceedings, the court finds, based on the record before it, that § 50–115 of the Kansas Act allows for the full consideration damages sought by plaintiffs here. Defendants' motion is denied on this basis.

● **Whether Proposed Application of Antitrust Law Renders it Unconstitutional**

Defendants next contend that plaintiffs' proposed application of the remedial provisions of the Kansas Act would render it unconstitutional. Specifically, defendants contend that allowing the indirect purchaser plaintiffs to recover full consideration damages would produce an unconstitutional disproportionate recovery in violation of the Fourteenth Amendment. *See Chicago & N.W. Ry. Co. v. Nye–Schneider–Fowler Co.,* 260 U.S. 35, 44–45, 43 S.Ct. 55, 67 L.Ed. 115 (1922) (finding state law damages provisions are unconstitutional "when

---

4. The *Williams* action refers to *Williams Foods, Inc. v. Eastman Chemical Co.,* Case No. 99C 16680, brought on behalf of Williams Foods, Inc. and similar individuals and entities that indirectly purchased sorbates in the State of Kansas from certain named defendants from January 1, 1979, through December 31, 1996. The state court approved a settlement in *Williams* on July 25, 2001.

5. The court recognizes that the Kansas District Court in Johnson County, Kansas gave final approval to the *Williams* settlement and

noted that "based on the difficulty in calculating class-wide damages for end consumers and business entities who purchased products containing sorbates solely for resale (such as grocery stores and restaurants)," and "considering the hundreds of grocery stores who have not chosen to opt-out or file objections" to this amount, and based on the facts presented to support the award, that the *cy pres* award of $50,000 agreed to by the parties was reasonable. However, this court must base its decision on the record before it on this Motion for Judgment on the Pleadings.

in their actual operation ... such statutes work an arbitrary, unequal, and oppressive result ... which shocks the sense of fairness the Fourteenth Amendment was intended to satisfy in respect of state legislation...."). Defendants contend that allowing the indirect purchaser plaintiffs here to recover full consideration would produce absurd results not only in the circumstances of this case, but also in other economic situations.

The court finds that this issue is prematurely raised, as there has been no finding of actual damages to plaintiffs from which a constitutional proportionality analysis can be made. As noted above, the court is unwilling to assume that the *Williams* settlement amount is the proper valuation of plaintiffs' claims. Therefore, the court cannot say that the overcharge created by defendants' allegedly unlawful antitrust behavior is disproportionate to the full consideration amount of over $100 million that plaintiffs allege was paid for the products containing the sorbates. That is, given the record before it, the court cannot say that there would be a disproportionate recovery that would "shock[ ] the sense of fairness" under the Fourteenth Amendment. *Chicago & Northwestern Ry. Co.*, 260 U.S. at 44–45, 43 S.Ct. 55.

■ One of the cardinal rules governing federal courts is "never anticipate [a] question of constitutional law in advance of necessity of deciding it." *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 501, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985) (internal quotations omitted). Moreover, with respect to federal statutes, the Supreme Court has noted that "the delicate power of pronouncing an Act of Congress unconstitutional is not to be exercised with reference to hypothetical cases thus imagined." *United States v. Raines*, 362 U.S. 17, 22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960).

Therefore, keeping in mind that a statute is presumed constitutional, the court finds that at this stage of the proceeding, defendants have not met their burden to establish the unconstitutionality of the Kansas Act. *State v. Perez*, 269 Kan. 340, 342, 11 P.3d 52, 54 (2000) (noting the party questioning the statute bears the burden of proof to establish its unconstitutionality). Defendants' motion on this basis is denied at this time.

● **Applicable Statute of Limitations**

Finally, defendants contend that the one-year statute of limitations set forth in Kan. Stat. Ann. § 60–514(c) applies to each of plaintiffs' claims. Defendants further contend that the limitations period began to accrue, at the latest, on September 30, 1998—the date defendant Eastman agreed to enter a guilty plea on sorbates price fixing charges brought by the U.S. Department of Justice. Therefore, defendants assert plaintiffs' antitrust claims related to sorbates price fixing are untimely filed. In response, plaintiffs contend that it is the three-year limitations period set forth in Kan. Stat. Ann. § 60–512(2) that governs their claims. Accordingly, plaintiffs contend their action has been timely filed. As set forth below, the court finds plaintiffs' antitrust claims were timely filed.

● **Section 60–514(c) Not Applicable**

■ Plaintiffs' Complaint asserts that defendants' actions in fixing the prices of sorbates were in violation of Kansas antitrust law, Kan. Stat. Ann. § 50–101, *et seq.* Kansas state law governs the statute of limitations applicable to plaintiffs' state statutory claims in this diversity action. Defendants contend that § 60–514(c)'s one year limitation period applies because plaintiffs seek treble damages, in excess of their actual damages and, therefore, plaintiffs' claims are claims "upon statutory penalty or forfeiture." Kan. Stat. Ann. § 60–514(c). The court disagrees.

A claim which arises from a statute does not automatically constitute a "penalty" or

"forfeiture" so as to trigger a one-year statute of limitations period, even if a plaintiff is entitled to recover more than his actual damages. *See Alexander v. Certified Master Builders Corp.*, 268 Kan. 812, 820, 1 P.3d 899, 905–06 (2000) (finding one year limitation period under § 60–514(c) inapplicable to statutory Kansas Consumer Protection Act claim, even where plaintiff sought to recover both actual damages and civil penalties).

Determination of whether § 60–514's one year limitation period applies to an action requires an examination of the "*nature* of the right which has been injured," rather than "the *remedy* therefor." *Haag v. Dry Basement, Inc.*, 11 Kan.App.2d 649, 651, 732 P.2d 392, 394 (1987) (citing *Holley v. Coggin Pontiac, Inc.*, 43 N.C.App. 229, 259 S.E.2d 1, 6–7 (1979) (noting that although state antitrust legislation had punitive elements, it was not considered a penal statute where it had "multiple objectives of which some are not penal in nature" and claims raised addressed individual, rather than public, harms)). "[T]o let the limitations be determined by the remedy would be to have the tail wag the dog." *Id.*

Here, the plaintiffs' action seeks to recover upon an antitrust liability created by the Kansas Restraint of Trade Act. Although the remedial statutory scheme in that Act provides for recovery of treble damages, the court must focus on the nature of the right alleged—the right to be free from antitrust behavior—rather than the remedy sought—treble damages. Here, considering the guidance of the Kansas courts, this court finds that plaintiffs' statutory antitrust claims are not claims

"upon statutory penalty or forfeiture." Therefore, § 60–514(c)'s limitation period is not applicable to plaintiffs' claims. Defendants' motion is denied on this basis.

● **Section § 60–512(2) Applicable**

■ Significantly, the highest court in Kansas has addressed the limitations period applicable to antitrust claims brought under its state antitrust statute. In *McCue v. Franklin*, the Kansas Supreme Court indicated that an action "based upon a claimed violation of the anti-trust laws of Kansas, . . . [§ ] 50–101, et seq," is governed by the three year limitations period set out in Kan. Stat. Ann. § 60–512,[6] as an "action[ ] upon a liability created by statute." 156 Kan. 1, 7, 131 P.2d 704, 707–08 (1942).

■ As set out by Kansas courts, the "appropriate inquiry to determine whether a liability is created by a statute (thus making K.S.A. 60–512[2] applicable) is whether liability for resultant damages would not arise but for the statute." *Haag*, 11 Kan.App.2d at 650, 732 P.2d at 393. A statute "that merely provides a procedure for obtaining relief does not trigger K.S.A. 60–512(2); it must provide a new substantive right that does not otherwise exist at common law." *Wright v. Kan. Water Office*, 255 Kan. 990, 996, 881 P.2d 567, 572 (1994).

Here, the basis for plaintiffs' claims rest on provisions of the Kansas Restraint of Trade Act, § 60–101, et seq. There is no indication that plaintiffs' claims alleging liability for antitrust behavior under Kansas law would arise outside the provisions of the Kansas statute. Accordingly, the

---

**6.** At the time *McCue* was decided, a predecessor provision of § 60–512 was in effect. The statutory provision referenced in *McCue*—Kan. Stat. Ann. § 60–306—is identical in relevant part to Kan. Stat. Ann. § 60–512. Similar to § 60–512, § 60–306 set a three-year limitations period for "an action upon a

liability created by statute, other than a forfeiture or penalty." *See* Notes to Kan. Stat. Ann. § 60–512(2); *Bd. of Comm'rs of Montgomery County v. McKittrick*, 141 Kan. 283, 285–86, 40 P.2d 352, 354 (Kan.1935) (citing Kan. Stat. Ann. § 60–306).

court finds that liability for the antitrust behavior alleged here arises out of the Kansas antitrust statute, rather than state common law.

Accordingly, considering the ruling in *McCue* and the statutory basis for the antitrust liability alleged by plaintiffs, the court finds the applicable statute of limitations is three years, as set out in § 60–512(2).

● **Application of § 60–512(2) Three Year Limitation Period**

Defendants contend that the discovery rule applies to determine the date on which plaintiffs' antitrust claims began to accrue. Specifically, defendants assert that the statute of limitations "began to run, at the latest, when Plaintiffs acquired constructive knowledge of the facts underlying the misconduct Plaintiffs now allege-i.e., 'when, through reasonable diligence, [they] could have learned of the acts or conduct giving rise to [their] injuries.'" (Defs.' Reply at 12 (citing *In re Vitamins Antitrust Litig.*, No. Misc. 99–197, 2000 WL 1524912, at *5 (D.D.C. July 14, 2000)) (examining limitations period applicable to Kansas antitrust claim)).

Even if the court were to find that plaintiffs' claims began to accrue on the date asserted by defendants—no later than September 30, 1998—the court finds that plaintiffs' claims were timely filed. Plaintiffs filed their claims herein in Kansas state court on July 9, 2001—well within the three-year limitation period. Therefore, upon application of § 60–512(2)'s three-year limitation period, the court finds that plaintiffs' claims were timely filed. Defendants' motion is denied on this basis.

● **Order**

IT IS THEREFORE ORDERED that defendants' Motion for Judgment on the Pleadings Pursuant to Fed.R.Civ.P. 12(c) (Doc. 103) is hereby denied.

IT IS SO ORDERED. Dated this 26th day of February 2003, at Kansas City, Kansas.