**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 20 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SHARON H. COOK,

      Plaintiff-Appellant,

v.

CORPORATION OF THE
PRESIDENT OF THE CHURCH OF
JESUS CHRIST OF LATTER DAY
SAINTS, a Utah corporation sole,
GORDON B. HINCKLEY, President
of the Corporation of the President of
the Church of Jesus Christ of
Latter-Day Saints; HERBERT T.
GOLDHARDT, also known as
Herbert K. Goldhardt, agent for the
corporation of the President of the
Church of Jesus Christ of Latter-Day
Saints,

      Defendants-Appellees.

No. 03-4287
(D.C. No. 2:02-CV-1368-TC)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **HARTZ**, and **TYMKOVICH**, Circuit Judges.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Sharon H. Cook, proceeding pro se, appeals the district court's grant of summary judgment in favor of her former employer, Corporation of the President of The Church of Jesus Christ of Latter-Day Saints (COP), on her claims of religious and gender discrimination under Title VII of the Civil Rights Act and age discrimination under the Age Discrimination in Employment Act (ADEA). She also seeks review of the district court's denial of her motions for relief from judgment filed under Fed. R. Civ. P. 60(b) and her motion to amend her complaint. We affirm the judgment of the district court.[1]

## I. Background

For eighteen years, Ms. Cook worked for COP, a not-for-profit corporation organized to manage property and assets of The Church of Jesus Christ of Latter-Day Saints (LDS Church) for the benefit of its religion, charitable works, and public worship. COP requires each employee to maintain a temple recommend, which is an LDS leader's written certification evidencing the individual's

---

[1]     In her filings, plaintiff spells her name in all upper-case letters, followed by the trademark symbol. Because plaintiff does not provide a reason for this practice, this court declines to follow suit.

qualification for temple worthiness. A temple recommend is based on a number of factors, specifically including whether the individual is a faithful adherent to the teachings of the Church, and does not support or sympathize with apostate groups or individuals whose beliefs or teachings are contrary to the Church. The lack of a temple recommend can lead to employee discipline, ranging from probation to termination of employment.

Ms. Cook worked as a graphic designer for COP's religious publications for eighteen years. In late 2001, church security officers received information that Steven C. Davis knew of a bombing threat to church temples. Mr. Davis had been expelled from the LDS Church and was viewed by the church as an excommunicant and apostate. The informant also told the security officers that Davis had used the church's in-house mail system to distribute materials and that Ms. Cook may have given Davis access to that system. Accordingly, in November 2001 the security officers interviewed Ms. Cook.

The officers felt that statements by Ms. Cook during the interview suggested that she both supported Mr. Davis and held what they viewed to be "strange and unorthodox religious beliefs" that were inconsistent with LDS Church teachings. (Order at 4) The officers reported their impressions to the COP human resources department, which in turn consulted with Ms. Cook's ecclesiastical leaders. These leaders advised COP that Ms. Cook had a current

-3-

temple recommend, but that they were concerned about her nonconforming beliefs and affiliation with Mr. Davis.

Approximately one month after the security interview, Ms. Cook reaffirmed her belief in the teachings of the LDS Church to individuals in the COP human resources department. She also agreed to discontinue her association with Mr. Davis. COP undertook no disciplinary action at the time. But in February 2002, COP suspended Ms. Cook with pay, pending completion of another temple-worthiness check, based on information that Mr. Davis and his wife were living in Ms. Cook's residence. COP later permitted her to return to work on probationary status, conditioned on her agreement to refrain from communicating with Mr. Davis (except to the extent necessary as his landlord) or advancing his views.

In August 2002 Ms. Cook filed with the EEOC a charge of discrimination, alleging age, gender, and religious discrimination. She then filed this pro se federal action in December 2002. Litigation did not proceed smoothly. Ms. Cook filed numerous motions, accompanied by voluminous, but largely irrelevant, exhibits. Ms. Cook also sought a writ of mandamus seeking recusal of the magistrate judge. Defendants countered with motions of their own, including a summary judgment motion.

From Ms. Cook's case filings and from proceedings in a separate lawsuit brought by Mr. Davis against COP, COP decided that Ms. Cook was using her

litigation to advance Mr. Davis's agenda against the LDS Church and the individual defendants. In May 2003, COP terminated Ms. Cook's employment, stating, among other things, that she was discharged for "engaging in a series of actions demonstrating a lack of fidelity to [her] employer and to the President of the Church" and for "us[ing] the processes of the courts to make allegations and demand discovery from COP on behalf of a third person, Mr. Steve Davis, having nothing to do with [her] own employment relationship or claim." R., Vol. V, doc. 92, ex. L.

Ms. Cook then attempted to amend her complaint to add a retaliation claim. The district court dismissed the individual defendants since they were not employers under Title VII or the ADEA and granted summary judgment in favor of COP. The court denied Ms. Cook's motion to amend and also her subsequent motions under Fed. R. Civ. P. 60(b) for relief from judgment based on newly discovered evidence and fraud on the court. This appeal followed.

In this court Ms. Cook provides a great deal of extraneous argument concerning LDS Church leaders' alleged collusion to cast her and Mr. Davis in a bad light. Although Ms. Cook does not clearly state her appellate issues, she appears to claim error in the (1) grant of summary judgment on her age, gender, and religious discrimination claims, (2) denial of her motion to amend the

complaint, and (3) denial of her motions for relief from judgment. She also asserts unfair bias in the part of the district court and the magistrate judge.[2]

## II. Discussion

### A. Summary judgment standard

Whether COP was entitled to summary judgment is a question of law which we review de novo. *Croy v. Cobe Labs., Inc.*, 345 F.3d 1199, 1201 (10th Cir. 2003). Though we view all evidence and draw reasonable inferences in the light most favorable to the nonmoving party, "the nonmovant must establish, at a minimum, 'an inference of the existence of each element essential to [her] case.'" *Id.* (quoting *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)).

### B. Entry of Summary Judgment on Religious Discrimination Claim

Ms. Cook's claim of religious discrimination is squarely foreclosed by Supreme Court authority. In *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, the Court recognized that COP is a religious corporation exempt from Title VII's prohibition against discrimination in employment. 483 U.S. 327, 329-30 (1987); *see also id.* at 347 (J. O'Connor, concurring) (stating that the LDS Church "had the power to put [plaintiff] to a choice of qualifying for a temple recommend or losing his job because *the*

---

[2]    We note that Ms. Cook does not specifically appeal the dismissal of her claims against the individual defendants.

*Government* had lifted from religious organizations the general regulatory burden imposed by [Title VII]").

Ms. Cook attempts to escape the *Amos* holding by asserting that she maintained a valid temple recommend at all times, but that COP continually sought verification from an individual Church leader who "had no ecclesiastical or geographical jurisdiction [or] subject matter jurisdiction" over her. Aplt. Br. at 7-8. It is well established, however, that the civil courts do not play a role in the adjudication of "church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them." *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 714 (1976) (quotation omitted).

We conclude that the district court correctly granted COP's motion for summary judgment on the religious discrimination claim.

**C.  Entry of Summary Judgment on Gender and Age Discrimination Claims**

Because Ms. Cook has no direct evidence of gender or age discrimination, we evaluate her claims under the three-step burden-shifting framework set forth in *McDonnell Douglas* and its progeny. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-07 (1973); *Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002) (*McDonnell Douglas* applies to ADEA and Title VII claims). The plaintiff must first establish a prima facie case of prohibited employment

action. *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 922 (10th Cir. 2001). With a prima facie showing, the burden shifts to the employer to state a legitimate, "nondiscriminatory reason" for the "adverse employment action." *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003). If the employer meets this burden, then summary judgment is warranted unless the plaintiff can show that there is a genuine issue of material fact as to whether the proffered reasons are pretextual. *Id.*

ADEA and Title VII make it unlawful for an employer to discriminate against any employee because of the employee's protected status. 29 U.S.C. § 623(a); 42 U.S.C. § 2000e-2(a). A plaintiff's prima facie case requires a showing that she (1) belongs to a protected class, (2) suffered an adverse employment action, (3) was qualified for her position, and (4) has presented some evidence indicating that the employer intended to discriminate against her. *Sanchez v. Denver Pub. Schs*., 164 F.3d 527, 531 (10th Cir. 1998); *see also Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1137 (10th Cir. 2000).

The summary-judgment record is devoid of evidence supporting any element of Ms. Cook's prima facie case. At a hearing, the district court carefully inquired into the basis of her discrimination claims. When probed, she stated that it "was totally [clear] from the beginning that anybody that had the slightest association or acquaintance with Steve Davis or assisted him in any manner would

-8-

be a target [of] C.O.P." R., Vol. IX at 33-34. In sum, Ms. Cook provided no coherent evidence or argument that COP's adverse actions were attributable to her gender or age rather than her relationship with Mr. Davis.

As a consequence, the district court concluded that Ms. Cook failed to establish a prima facie case of illegal discrimination, and that even if she had done so, she did not raise evidence of pretext. On appeal, Ms. Cook has not advanced any grounds for disturbing the court's ruling and we decline to do so.

## D.  Denial of Motion to Amend Complaint

After her discharge, Ms. Cook sought to amend her complaint to add retaliation and state-law claims, and to include another LDS Church defendant. The district court denied her motion based on futility, a determination which we review de novo. *Watson ex rel. Watson v. Beckel,* 242 F.3d 1237, 1239 (10th Cir. 2001) "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment." *Id.* at 139-40.

Like her discrimination claims, Ms. Cook's proposed retaliation claim is analyzed under a burden-shifting framework. *See Stover v. Martinez,* 382 F.3d 1064, 1070 (10th Cir. 2004). Initially, a plaintiff must show (1) she engaged in protected opposition to discrimination, (2) the employer took an adverse employment action against her, and (3) a causal connection between the protected

activity and the adverse action. *Id.* at 1071. A satisfactory demonstration of these three elements "shifts the burden to the employer to produce a legitimate, nondiscriminatory justification for taking the disputed employment action." *Id.* at 1070-71. If the employer can show a nondiscriminatory reason, the burden returns "to the employee to provide evidence showing that the employer's proffered reason is a pretext for discrimination." *Id.* The question on pretext is not whether the employer was right, but whether the employer's belief was genuine or pretextual. *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1080 (10th Cir. 1999).

COP terminated Ms. Cook's employment approximately five months after she filed her discrimination lawsuit. We have recognized that protected conduct closely followed by an adverse employment action may justify an inference of retaliatory motive. *See, e.g., Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996). However, there is no bright line in this regard, and we have repeatedly rejected attempts to unduly stretch the "close temporal proximity" needed to establish an inference of retaliation. *Id.* (citations and quotations omitted). In a similar context we have held that a "four month time lag between [plaintiff's] participation in protected activity and his termination by itself would not be sufficient to justify an inference of causation." *Conner v. Schnuck*

*Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir.1997). Thus, we are doubtful that the five-month delay in this case justifies an inference of retaliatory motive.

Nevertheless, even assuming that Ms. Cook has shown a causal connection between the protected activity and the adverse action, COP countered with the nondiscriminatory reasons of insubordination and its belief that Ms. Cook used her lawsuit to help Mr. Davis in an attempt to attack the LDS Church and its leadership. These proffered reasons dovetail with Ms. Cook's thesis that she was disciplined because of her relationship with Mr. Davis and not because of any claims of discrimination. The district court did not err in determining that Ms. Cook's proposed amendment was insufficient to demonstrate pretext and that amendment would be futile. Additionally, we find no error in the district court's denial of Ms. Cook's motion to amend her complaint to add state-law claims and another defendant.

## E.  Denial of Motions for Relief from Judgment

Ms. Cook filed two motions for relief from judgment under Fed. R. Civ. P. 60(b). The first motion contended that the case should be re-opened based on newly discovered evidence; the second asserted fraud on the part of COP. This court reviews the district court's denial of her motions for abuse of discretion. *Joseph v. Terminix Int'l Co.*, 17 F.3d 1282, 1285 (10th Cir. 1994).

A party seeking relief from judgment based on newly discovered evidence must show diligence in the discovery of new, material, and noncumulative evidence which would probably produce a different result in the case. *Id.* Here, Ms. Cook's "newly discovered" evidence consisted entirely of an affidavit from Mr. Davis alleging his beliefs on COP's practices with regard to its employees, its business conduct, and his own excommunication. "For purposes of summary judgment, 'facts' must be established by evidence which would be admissible at trial." *BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1101 (10th Cir. 1999). Our review of the proffered affidavit convinces us that it was inadmissible. Its allegations are conclusory, express opinion rather than fact, and show on their face that they were not made from personal knowledge. The content of the affidavit could not have affected the outcome of this case.[3]

The fraud contention is similarly unavailing. Ms. Cook asserts that COP lied to the court by claiming that it was a non-dissolved corporation. This allegation, even if true, is immaterial to the resolution of the case. The denial of the Rule 60(b) motions does not amount to an abuse of discretion.

---

[3] Nor was there any error in the district court's refusing to allow Mr. Davis to testify at the summary-judgment hearing. Ms. Cook had no absolute right to an evidentiary hearing. A party's right to be heard on summary judgment "may be fulfilled by the court's review of the briefs and supporting affidavits and materials submitted to the court." *Geear v. Boulder Cmty. Hosp*., 844 F.2d 764, 766 (10th Cir. 1988).

## E. Remaining issues

We find no merit in the remaining issues Ms. Cook raises on appeal. Specifically, we reject her contention that "[a]ll Utah judges should have recused themselves and the case assigned to another state because of bias," Reply Br. at 24. Adverse rulings alone are insufficient grounds for disqualification of a judge. *Lopez v. Behles (In re Am. Ready Mix, Inc.)*, 14 F.3d 1497, 1501 (10th Cir. 1994). And the record reflects that both the magistrate judge and district judge treated Ms. Cook with patient consideration and construed her claims, filings, and argument as liberally as possible.

## III. Conclusion

Having reviewed the briefs, the record, and the applicable law, we conclude that the district court correctly resolved Ms. Cook's claims, and we AFFIRM. The mandate shall issue forthwith.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge