NOT DESIGNATED FOR PUBLICATION

No. 118,090

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PAULA LUBBERTS,
*Appellant*,

v.

4 LIFE WEIGHT LOSS CENTERS INC.,
d/b/a SLIM4LIFE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed July 6, 2018. Affirmed.

*Michael Stipetich*, of Smith Mohlman Injury Law, LLC, of Kansas City, Missouri, for appellant.

*Thomas M. Franklin*, of Leawood, for appellee.

Before MCANANY, P.J., LEBEN and SCHROEDER JJ.

PER CURIAM: The district court granted 4 Life Weight Loss Centers Inc., d/b/a Slim4Life (Slim 4 Life), summary judgment on Paula Lubberts' claims of deceptive and unconscionable acts or practices. We find the district court did not err in granting Slim 4 Life summary judgment as Lubberts failed to present any evidence of deceptive or unconscionable acts or practices to controvert Slim 4 Life's motion for summary judgment. Finally, we find the district court was vested with the authority to assess costs against Lubberts. We affirm.

FACTS

Lubberts alleges Slim 4 Life violated the Kansas Consumer Protection Act (KCPA) when it engaged in deceptive acts and practices and unconscionable acts and practices resulting in Lubberts' purchase of a $400 weight loss program and $2,600 in nutritional supplements and food. Lubberts sought damages under the KCPA, including attorney fees.

In this paragraph, we will set out the basic allegations Lubberts made in the lawsuit. In late May 2014, she attended an initial consultation at Slim 4 Life's Overland Park location. Despite telling Slim 4 Life's representative she could not afford the plan, Slim 4 Life's agents badgered her until she signed an agreement and paid $402.31. She then attended a group meeting at the store led by Joanne Fruits. When she told Fruits how much she hoped to lose, Fruits separated Lubberts from the group and pressured her into purchasing weight loss supplements in order to meet her weight loss goal. A few days later at her next visit to the store, Fruits called Kassi Williams to speak with Lubberts; Williams took Lubberts to an office, closed the door, and continued pressuring Lubberts to purchase $2,600 worth of supplements and food products.

Slim 4 Life moved for summary judgment. Slim 4 Life's exhibits included Lubberts' signed Slim 4 Life weight loss guarantee and a signed pricing sheet. Lubberts timely responded to Slim 4 Life's motion for summary judgment.

The pretrial order filed on March 16, 2017, identified Lubberts' 10 KCPA claims against Slim 4 Life. She alleged Slim 4 Life engaged in four deceptive acts and practices: a violation of K.S.A. 2017 Supp. 50-626(b)(1); a violation of K.S.A. 2017 Supp. 50-626(b)(2); and two violations of K.S.A. 2017 Supp. 50-626(b)(3). She also alleged six unconscionable acts and practices which violated K.S.A. 50-627.

2

On March 20, 2017, the district court heard argument on the motion for summary judgment. After hearing argument, the district court granted Slim 4 Life summary judgment. It found both the Slim 4 Life weight loss service guarantee and the program contract and agreement indicated nutritional supplements were required but not included in the price of the program. It also found, as presented, Lubberts did not show deception or unequal bargaining power regarding the closed door meeting in which Lubberts purchased $2,600 in food and supplements. In addition to granting Slim 4 Life summary judgment, the district court awarded costs against Lubberts.

ANALYSIS

The rules governing summary judgment are often stated and well known:

"'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citations omitted.]" *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 24, 378 P.3d 1090 (2016).

Both of Lubberts' claims are based on her objection to the district court's grant of summary judgment. An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. In other words, if the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue for purposes of

3

summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106, *cert. denied* 571 U.S. 826 (2013). A party cannot avoid summary judgment on the mere hope that something may develop later during discovery or at trial. Likewise, mere speculation is insufficient to avoid summary judgment. *Kincaid v. Dess*, 48 Kan. App. 2d 640, 656, 298 P.3d 358, *rev. denied* 297 Kan. 1246 (2013).

Under the KCPA, whether a deceptive act or practice has occurred is a question of fact for the jury. "It is susceptible to summary judgment in a defendant's favor only if unsupported by evidence." *Via Christi Regional Med. Center, Inc. v. Reed*, 298 Kan. 503, 520, 314 P.3d 852 (2013).

*Summary judgment was appropriate on Lubberts' deceptive acts and practices claims.*

Lubberts argues whether Slim 4 Life committed deceptive acts and practices is a factual determination for a jury. Her claim is generally true, but not under the facts as developed in this case.

The district court found that, by signing Slim 4 Life's weight loss service guarantee and pricing sheet, Lubberts acknowledged she understood she may be required to purchase additional food products or supplements to accomplish her weight loss goals. Taken with her deposition testimony, the district court found the signed agreements disproved Lubberts' claims for deceptive acts and practices. It held Slim 4 Life was entitled to summary judgment on Lubberts' deceptive acts and practices claims.

"The KCPA [protects] consumers from unscrupulous business practices and, as remedial legislation, should be read liberally to further that objective. . . . The KCPA prohibits deceptive acts and practices 'in connection with a consumer transaction,' as described in K.S.A. 50-626. In turn, a 'consumer transaction' has been broadly defined

4

under the KCPA to mean 'a sale . . . or other disposition for value of property or services . . . or a solicitation by a supplier with respect to any of these dispositions.' [Citations omitted.]" *Golden v. Den-Mat Corporation*, 47 Kan. App. 2d 450, 470, 276 P.3d 773 (2012).

K.S.A. 2017 Supp. 50-626(b)—the portion of the KCPA prohibiting deceptive acts and practices—states, in relevant part:

"(b) Deceptive acts and practices include, but are not limited to, the following, each of which is hereby declared to be a violation of this act, whether or not any consumer has in fact been misled:

(1) Representations made knowingly or with reason to know that:

(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;

. . . .

(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;

. . . .

(F) property or services has uses, benefits or characteristics unless the supplier relied upon and possesses a reasonable basis for making such representation; or

. . . .

(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;

(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact;

. . . .

(5) offering property or services without intent to sell them;

(6) offering property or services without intent to supply reasonable, expectable public demand, unless the offer discloses the limitation."

Lubberts specifically contends Slim 4 Life "failed to state, concealed, suppressed, or omitted" three material facts: (1) the program would cost $400 instead of $199; (2)

5

she would be required to purchase additional nutritional supplements as a required part of the weight loss program; and (3) the costs of the nutritional supplements were substantially higher than either $199 or $400. She also contends Slim 4 Life's representatives' statements regarding the supplements were ambiguous, exaggerated, or false because Williams compared the food products to Weight Watchers dinners. Lubberts also argues the "crux" of her case is a bait-and-switch scheme prohibited by K.S.A. 2017 Supp. 50-626(b)(5). She contends Slim 4 Life advertised an affordable weight loss program in order to draw her in and persuade her to spend substantially more money on other products.

First, in her deposition, Lubberts testified Williams told her she could just use Weight Watchers dinners. However, Lubberts did not allege this as an uncontroverted statement of fact. Nor did Lubberts allege Williams told her she could use Weight Watchers dinners in response to Slim 4 Life's statements of uncontroverted fact.

Second, Lubberts presented no evidence Slim 4 Life "failed to state, concealed, suppressed, or omitted" that the program would cost $400. To the contrary, the program contract and agreement clearly states the cost of the program was $402.31. The weight loss service guarantee and the pricing sheet also clearly state the cost of the program was $374. (Lubberts was also charged $28.31 in sales tax.) While Lubberts testified at her deposition she believed the program would be $199 based on television advertisements, she also acknowledged she merely assumed it was for a program to help her lose the weight she needed to lose. She testified she did not know how long the $199 program lasted, how many sessions it covered, or anything about the program other than the advertised price. Lubberts produced no evidence the program would cost $199, other than her allegation. However, on a motion for summary judgment, we take her statement as being true since it was not controverted by Slim 4 Life. Despite this, we note every document Lubberts signed—prior to paying—indicated the cost of the program was $374 plus tax.

6

Third, Lubberts presented no evidence Slim 4 Life "failed to state, concealed, suppressed, or omitted" that she would be required to purchase additional nutritional supplements as a required part of the weight loss program. In her deposition, Lubberts testified she did not recall anyone telling her about supplements during her initial meeting. However, in her refund request, Lubberts wrote: "[Williams] did explain the products, and at that point I'm thinking that maybe that would be optional." In addition, the initial pricing sheet specifically states:  "PRICING FOR MY WEIGHT LOSS PROGRAM HAS BEEN DISCLOSED TO ME—I UNDERSTAND THAT THE NUTRITIONAL SUPPLEMENTS AND PRODUCTS ARE A REQUIRED PART OF MY NUTRITIONAL PROGRAM, BUT THEY ARE NOT INCLUDED IN THE PROGRAM PRICE EXCEPT FOR THE STARTER PACK." It also contains a section entitled "Program includes," which lists the various supplements Lubberts' weight loss program required *and their cost per box*. The form contains various check marks which appear to reflect these items were given to Lubberts at the time the program was started. Unfortunately, the record is silent on this point. Lubberts signed the form with the checkmarks.

Similarly, the Slim 4 Life weight loss service guarantee was valid so long as Lubberts followed the program and, among other things, purchased two boxes of supplements weekly. At the bottom of the page, it advised: "THE COST OF NUTRITIONAL SUPPLEMENTS AND HERBAL BALANCE PRODUCTS ARE NOT INCLUDED IN THIS GUARANTEE; THEY ARE AN ADDITIONAL COST, NON-REFUNDABLE AND NON-EXCHANGEABLE." The program contract and agreement also contained an acknowledgement, stating in part:

> "I understand that I am responsible for the cost of ALL required Nutritional Supplements at a cost of $9.00 to $15.00 per box dependent on the volume purchased and that supplements and weight loss aids other than those received in my starter pack at the time of enrollment are not included in the program price."

7

Once again, Lubberts signed the document with this disclosure.

Lubberts' final claim is Slim 4 Life engaged in a "bait and switch" scheme prohibited by K.S.A. 2017 Supp. 50-626(b)(5). Slim 4 Life contends Lubberts does not have a claim pursuant to K.S.A. 2017 Supp. 50-626(b)(5) because she failed to include it in the pretrial order. In her reply brief, Lubberts argues these claims should not be barred because they arise under the same statute as the claims she raised in her pretrial order. Lubberts never asked to amend the pretrial order.

A pretrial order supersedes any pleadings, has the effect of amending the pleadings to conform to it, and is the ultimate determinant of the legal issues on which a case will be decided. *Unruh v. Purina Mills*, 289 Kan. 1185, 1191, 221 P.3d 1130 (2009); see *Porras v. Bell*, 18 Kan. App. 2d 569, 571, 857 P.2d 676 (1993) (district court erred in failing to give an instruction on intent because the pretrial order specifically alleged violations of subsections in 50-626(b) in which intent is an element). Here, the pretrial order lists 10 specific claims, including claims for deceptive acts and practices under K.S.A. 2017 Supp. 50-626(b)(1), (2), and (3); claims for unconscionable acts and practices under K.S.A. 50-627; and for violations of K.S.A. 50-675. The pretrial order lists these claims with specificity and does not reference K.S.A. 2017 Supp. 50-626(b)(5) or (b)(6). Additionally, her response to the motion to summary judgment does not reference K.S.A. 2017 Supp. 50-626(b)(5)-(6) or discuss a bait-and-switch scheme. Lubberts did not raise this issue below. Issues not raised before the trial court cannot be raised on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). She is not entitled to relief based on her claim of "bait and switch."

Even if we allowed Lubberts to raise this issue for the first time on appeal, relief is still not available to her. The Kansas Supreme Court has explained bait-and-switch schemes:

8

"'Bait advertising is an alluring but insincere offer to sell a product or service which the advertiser in truth does not intend or want to sell. Its purpose is to switch consumers from buying the advertised merchandise, in order to sell something else, usually at a higher price or on a basis more advantageous to the advertiser. The primary aim of the bait advertisement is to obtain leads as to persons interested in buying merchandise of the type so advertised.' 16 C.F.R. § 238.0 (1985)." *Manley v. Wichita Business College*, 237 Kan. 427, 436, 701 P.2d 893 (1985).

Lubberts contends *Manley* is analogous because Slim 4 Life "advertised affordable weight loss program services to draw [her] in and then persuaded her to purchase substantially higher cost products." However, here there was no "switch." There is no evidence Slim 4 Life offered its services without actually intending to sell them. Furthermore, Slim 4 Life actually sold Lubberts its weight loss service based on the program she needed to meet her goal.

The district court did not err when it granted Slim 4 Life summary judgment on Lubberts' deceptive acts and practices claims. Lubberts failed to allege Williams told her she could just use Weight Watchers meals as a statement of uncontroverted fact and failed to use the allegation to controvert one of Slim 4 Life's statements of uncontroverted facts. In addition, the program contract and agreement, the weight loss service guarantee, and the pricing sheet all indicated the program cost was approximately $400. Similarly, Lubberts presented no evidence suggesting anyone "failed to state, concealed, suppressed, or omitted" that she would be required to purchase additional nutritional supplements as part of the weight loss program. In fact, every form Lubberts signed indicated there were additional fees for food and the nutritional supplements since they were not included in the cost of the program. Finally, neither the pretrial order nor Lubberts' response to the motion for summary judgment address the bait-and-switch arguments she raises for the first time on appeal. Since Lubberts failed to controvert the motion for summary judgment by providing evidence to support her claims for deceptive

acts and practices, we must affirm the district court's grant of summary judgment to Slim 4 Life on her claims of deceptive acts and practices.

*Summary judgment was appropriate on Lubberts' unconscionable acts and practices claims.*

Lubberts argues the district court erred when it granted Slim 4 Life summary judgment on her unconscionable acts and practices claims. She claims there was unequal bargaining power and Slim 4 Life engaged in deceptive conduct. Slim 4 Life denies it engaged in deceptive conduct.

> "Our precedent dictates that whether an action is unconscionable under the KCPA is a legal question for the court and that our review is therefore unlimited. See, *e.g., State ex rel. Stovall v. ConfiMed.com,* 272 Kan. 1313, 1317, 38 P.3d 707 (2002). The determination of unconscionability, however, ultimately depends upon the facts in a given case. *State ex rel. Stovall v. DVM Enterprises, Inc.,* 275 Kan. 243, 249, 62 P.3d 653 (2003). And, to a great extent, the determination is left to the sound discretion of the trial court. 275 Kan. at 249. An unconscionable act or practice requires both supplier deception and unequal bargaining power. *ConfiMed.com,* 272 Kan. at 1323." *Via Christi*, 298 Kan. at 525.

The district court found Slim 4 Life was entitled to summary judgment on Lubberts' claims for unconscionable acts and practices. The district court found Lubberts failed to show any deception by Slim 4 Life. Without a finding of deception, there is no basis for an unconscionable act and practice claim. The district court also found the no-refund policy was clearly disclosed and covered the packaged food and nutritional supplements. Such a policy was not unconscionable. Finally, it found Lubberts' meeting in a private office served a reasonable purpose (her privacy) and fails to show any unequal bargaining power, any inability on her part to understand what she was buying, or any misleading statements.

10

K.S.A. 50-627—the statute governing KCPA claims for unconscionable acts and practices—states, in relevant part:

"(a) No supplier shall engage in any unconscionable act or practice in connection with a consumer transaction. An unconscionable act or practice violates this act whether it occurs before, during or after the transaction.

"(b) The unconscionability of an act or practice is a question for the court. In determining whether an act or practice is unconscionable, the court shall consider circumstances of which the supplier knew or had reason to know, such as, but not limited to the following that:

(1) The supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor;

. . . .

(6) the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment."

In her brief, Lubberts overstates or mischaracterizes the reason for finding unconscionability in *Dodson v. U-Needa Self Storage*, 32 Kan. App. 2d 1213, 96 P.3d 667 (2004). The *Dodson* panel focused on the Dodsons' inability to receive a material benefit from the transaction and U-Needa's deceptive bargaining and unequal bargaining power. Although the *Dodson* court noted standard boilerplate contract language is a factor to consider in determining unequal bargaining power, the court seemed to focus on the fact Lynn Dodson had never signed a contract before; U-Needa instructed her on how to fill out the form; and the fact the Dodsons had personal property worth over $7,000 in their vehicle, were without a home, and were in desperate need of a storage unit. Based on these factors, the *Dodson* court determined there was unequal bargaining power and U-Needa committed an unconscionable act. 32 Kan. App. 2d at 1219-20. U-Needa did not commit an unconscionable act simply by using boilerplate language in its contract—it was the other facts outlined in the case to support the unconscionable act such as, "the

11

consumer was unable to receive a material benefit from the subject of the transaction." *Dodson*, 32 Kan. App. 2d 1213, Syl. ¶ 6. Here, Lubberts received a material benefit of the contract by receiving the counseling, food, and supplements she purchased.

Lubberts contends Slim 4 Life's use of a standard boilerplate contract with fine print warrants a finding of unconscionability, especially since the fine print language contradicted what Williams communicated to Lubberts. She contends Williams "intentionally misrepresented" Lubberts' $400 purchase "would be solely sufficient to meet the weight loss goal" of 30+ pounds. However, nothing in the record supports her contention. In her deposition, Lubberts testified she did not remember any discussions about supplements or food items in her first discussion with Williams. Lubberts never testified Williams told her $400 would be sufficient to meet her weight loss goal. Lubberts presented no evidence suggesting Williams misrepresented the $400 Lubberts paid would cover her entire weight loss goals.

Lubberts now argues Fruits and Williams mislead her when, despite formal training in nutrition, they told her the nutritional supplements would allow her to meet her weight loss goal. Lubberts did not argue this in her response to the motion for summary judgment before the district court. Issues not raised before the trial court cannot be raised on appeal. *Wolfe Electric, Inc.*, 293 Kan. at 403. Furthermore, while Fruits admitted she did not have formal training in nutrition, there is no indication Williams had no training in nutrition. Similarly, regardless of Fruits and Williams formal training in nutrition, Lubberts presented no evidence in the record suggesting her use of the nutritional supplements would not help her meet her weight loss goal.

Lubberts also argues Slim 4 Life's use of "oppressive sales tactics," like meeting behind closed doors and "near daily phone calls in which Lubberts was pressured to continue with the program," were unconscionable. Lubberts has not shown how meeting behind a closed door constituted an oppressive sales tactic—after all, they were talking

about personal medical issues. Similarly, Lubberts does not explain how near-daily phone calls—after she has already paid for the products—pointed to unconscionable circumstances *surrounding the contract's formation.*

Finally, Lubberts argues the denial of her refund request, despite reasonable justification, was unconscionable. However, she fails to expand on this argument or explain why the decision not to refund her money was unconscionable when she had signed multiple documents acknowledging all sales were final/nonrefundable.

Under our standard of review, even if we resolve all reasonable inferences in her favor, Lubberts has failed to present any material facts suggesting Slim 4 Life engaged in unconscionable acts or practices. The district court did not err when it granted Slim 4 Life summary judgment on Lubberts' claims for unconscionable acts and practices under the KCPA.

*Costs Awarded Against Lubberts*

Lubberts argues the district court erred when it assessed costs against her. Citing K.S.A. 50-634(e), she argues Slim 4 Life is not entitled to costs because she did not bring a groundless or frivolous claim. Lubberts' reliance on K.S.A. 50-634(e) is misplaced. K.S.A. 50-634(e) applies to attorney fees, not costs, and the court did not award attorney fees. The KCPA does not contain a statutory provision concerning court costs. Instead, K.S.A. 2017 Supp. 60-2002(a) governs and states:

> "*Unless otherwise provided by statute, or by order of the judge, the costs shall be allowed to the party in whose favor judgment is rendered.* The court shall have the discretion to order that the alternative dispute resolution fees be, in whole or in part, paid by or from any combination of any party or parties, from any fund authorized to pay such fees, or from the proceeds of any settlement or judgment." (Emphasis added.)

13

The district court rendered judgment in Slim 4 Life's favor. The statute allowed the district court to award costs against the losing party. The district court did not err by assessing costs against Lubberts.

Affirmed.